# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**MICHAEL COLLIER,**

        **Plaintiff,**                  Civil Action No. 3:16-cv-02077

        v.                            District Judge Waverly D. Crenshaw, Jr.

**COMMISSIONER OF**               Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Collier seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court is Plaintiff's Motion for Judgment on the Administrative Record (docket no. 17). Defendant filed a response opposing Plaintiff's motion (docket no. 21). This matter has been referred to the Magistrate Judge for a Report and Recommendation on disposition of Plaintiff's Complaint for judicial review of the decision of the Social Security Administration. (Docket no. 7.) Pursuant to Administrative Order No. 24 entered on January 23, 2018, the undersigned is authorized to hold court and perform other judicial duties in the Middle District of Tennessee under 28 U.S.C. § 636, subsections (a), (b), and (c).

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that the Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (docket no. 17); **AFFIRM** the Commissioner's final decision; and **DISMISS** Plaintiff's complaint.

## II. PROCEDURAL HISTORY

On November 26, 2012, Plaintiff applied for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income ("SSI"), alleging that he has been disabled since May 30, 2012. (TR 13.) The Social Security Administration initially denied Plaintiff's claims on April 18, 2013. (TR 147.) On February 5, 2015, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) Scott Shimer. (TR 37-64.) On April 16, 2015, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 13-31.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on June 3, 2016. (TR 1-5.) On August 5, 2016, Plaintiff commenced this action for judicial review, and subsequently filed a motion for judgment on the administrative record, which is currently before the Court. (Docket no. 17.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 18, pp. 3-16.) In addition, the ALJ summarized Plaintiff's medical record (TR 16-29), and Defendant deferred to the ALJ's summary (docket no. 21, p. 2). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017 and had not engaged in substantial gainful activity

since May 30, 2012, the alleged onset date. (TR 16.) In addition, the ALJ found that Plaintiff had the following severe impairments: "obesity; diabetes mellitus; osteoarthritis; history of right shoulder surgery; mild bilateral carpal tunnel syndrome status post bilateral carpal tunnel release; degenerative disc disease; Raynaud's syndrome; history of pseudoseizure; cognitive disorder; major depressive disorder; anxiety; and attention deficit hyperactivity disorder." (*Id*.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.) In addition, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations:

- limited to frequent balancing, kneeling, crouching, and climbing of ramps and stairs;
- limited to occasional stooping and crawling;
- no climbing of ladders, ropes, or scaffolds;
- no overhead reaching with the right upper extremity;
- no concentrated exposure to extreme cold temperatures;
- no working at unprotected heights or around unguarded moving machinery;
- no driving;
- limited to simple, routine, repetitive tasks;
- limited to occasional contact with the public, coworkers, and supervisors;
- limited to infrequent workplace changes.

(TR 18-19.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that Plaintiff is not capable of performing past relevant work, but could perform occupations that exist in significant numbers in the national economy including

3

"assembler," "marker" and "hand packager." (TR 29-30.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time since the alleged onset date. (TR 31.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

   B.   **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

   (1)   Plaintiff was not presently engaged in substantial gainful employment; and

   (2)   Plaintiff suffered from a severe impairment; and

   (3)   the impairment met or was medically equal to a "listed impairment;" or

   (4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a

hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

Plaintiff contends that the ALJ committed two errors. First, Plaintiff asserts that the ALJ's "mental residual functional capacity determination is unsupported by substantial evidence." (Docket no. 18, p. 16.) Second, Plaintiff submits that the ALJ's disability determination is not supported by substantial evidence because "the ALJ relied upon an incomplete hypothetical question asked to the vocational expert." (*Id.*) These arguments will be addressed in turn below.

*1. Mental Residual Functional Capacity*

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ failed to reconcile the RFC with the limitations proposed by Dr. Paul W. Brown, and (2) the ALJ failed to reconcile and/or properly weigh the opinion of Dr. James Hebda.

As addressed above, the RFC limited Plaintiff to "simple, routine, repetitive tasks," "occasional contact with the public, coworkers, and supervisors," and "infrequent workplace changes." (TR 18-19.) Plaintiff asserts that the ALJ erred by failing to incorporate Dr. Brown's opinion that Plaintiff "does not appear capable of performing simple routine activities on a consistent basis over longer periods of time." (Docket no. 18, p. 20.) The ALJ acknowledged that proposed limitation, but also took note of Dr. Brown's assertion that Plaintiff "could do activities with his own initiative or prompting, that he did not require a structured environment, and that he appeared to generally behave in an acceptable manner when engaged in an activity." (TR 25.) In addition, the ALJ observed that "there is no evidence of [Plaintiff receiving] any

6

significant mental health treatment," and that state-agency psychological consultant Dr. Andrew Phay concluded that Plaintiff could "understand and remember simple, low-level detailed tasks," "sustain an ordinary work routine," and "make acceptable simple and detailed work-related decisions." (TR 28.) Accordingly, substantial evidence supports the ALJ's determination not to adopt Dr. Brown's opinion that Plaintiff "does not appear capable of performing simple routine activities on a consistent basis over longer periods of time."

In addition, Plaintiff submits that the RFC fails to account for the following determinations in Dr. Brown's evaluation:

- Plaintiff has mild to moderate limitations in understanding and remembering;
- Plaintiff has moderate limitations in sustaining concentration and persistence;
- Plaintiff has moderate limitations in interacting with others;
- Plaintiff has moderate limitations in adapting to changes and requirements.

(Docket no. 18, p. 20.) However, the RFC limits Plaintiff to "simple, routine, repetitive tasks," "occasional contact with the public, coworkers, and supervisors," and "infrequent workplace changes." These restrictions adequately account for Dr. Brown's opinion that Plaintiff has "mild" or "moderate" limitations in the general categories described above. Courts addressing such "mild" or "moderate" limitations have reached similar conclusions. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 597–98 (6th Cir. 2005) (The ALJ's determination that the plaintiff had a "limited but satisfactory ability to deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed instructions and to demonstrate reliability" accounted for "the moderate limitations described by the medical professionals who evaluated [the plaintiff]."); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 280 (6th Cir. 2009) (affirming denial of benefits where the ALJ limited the plaintiff to "simple repetitive type work . . . because of a moderate limitation in [plaintiff's] ability to maintain attention and concentration

7

due to mental impairment"); *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 466 (6th Cir. 2014) (upholding denial of benefits where Plaintiff's "treating psychiatrist assessed only mild or moderate limitations—rather than marked or extreme impairments—in various areas of functioning"); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436 (6th Cir. 2014) (holding that a limitation to "simple, routine, repetitive tasks adequately conveys [the plaintiff's] moderately-limited ability 'to maintain attention and concentration for extended periods'"). Accordingly, the RFC incorporates Dr. Brown's opinions that Plaintiff is "mildly" or "moderately" limited in understanding and remembering, sustaining concentration and persistence, interacting with others, and adapting to changes and requirements.

With respect to Dr. Hebda, Plaintiff contends that the ALJ erred by failing to apply the treating physician rule and by failing to modify the RFC based on Dr. Hebda's proposed limitations.

Although the ALJ did not address whether Dr. Hebda was Plaintiff's treating physician, the record supports such a designation. Nurse Practitioner Julie Coleman referred Plaintiff to Dr. Hebda for a neuropsychological evaluation, which was conducted over the course of seven examinations from January through May of 2013. (TR 366, 748.) A "treating source" is one that has provided the plaintiff with "medical treatment or evaluation" with "a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1527(a)(2). For the purposes of this report, the undersigned assumes that seven visits over the course of five months is "consistent with accepted medical practice" for the purpose of a neuropsychological evaluation. Accordingly, the ALJ was required to apply the treating physician rule to Dr. Hebda.

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must also "give good reasons in [his] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & Xvi: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2P (S.S.A. July 2, 1996).

On review of the record in this matter, the ALJ articulates good reasons in support of the weight given to Dr. Hebda's opinion. Primarily, the ALJ highlighted internal inconsistencies in Dr. Hebda's analysis. For example, the ALJ underscored a conflict between Dr. Hebda's opinion that Plaintiff "displays marked impairment" that would "significantly impede[] his vocational functioning" (TR 751) with his more particularized determinations that Plaintiff had a "moderate impairment in both concentration and general adaptation" and only "mild" limitations in his ability to "understand and remember simple instructions," "carry out simple instructions," and "make judgments on simple work-related decisions." (TR 751, 753.) Furthermore, the ALJ

9

highlighted an inconsistency between Dr. Hebda's opinion that Plaintiff displayed "marked" limitations his ability to "interact with the public," "interact appropriately with supervisors," "interact appropriately with co-workers," and "respond appropriately to changes in a routine work setting" (TR 753) with his assessment that Plaintiff had only a "moderate impairment in social functioning . . . and general adaptation." (TR 751.)

In addition, as addressed above in the context of Dr. Brown's opinion, the ALJ noted that "there is no evidence of [Plaintiff receiving] any significant mental health treatment," and that state-agency psychological consultant Dr. Andrew Phay determined that Plaintiff could "understand and remember simple, low-level detailed tasks," "sustain an ordinary work routine," and "make acceptable simple and detailed work-related decisions." (TR 28.) Finally, the ALJ observed that Plaintiff's "academic and impaired executive-level issues have likely been problems for a while and yet they did not prevent [Plaintiff] for [*sic*] performing work activity prior to his alleged onset date." (TR 26.) The ALJ's assertion that Plaintiff's mental impairments "likely have been problems for a while" is supported by Plaintiff's testimony that he was in special education in all subjects in school. (TR 41.)

Accordingly, as summarized above, the ALJ provided good reasons for the weight given to Dr. Hebda's evaluation, and the determination not to adopt all of Dr. Hebda's proposed limitations is supported by substantial evidence.

## 2. *Hypothetical to Vocational Expert*

Plaintiff contends that "[d]ue to the ALJ's errors in evaluating Plaintiff's RFC, the hypothetical question [to the vocational expert] was incomplete." (Docket no. 18, p. 26.) However, as addressed above, the ALJ's RFC determination is supported by substantial

evidence. Accordingly, the ALJ did not err by posing a hypothetical to the vocational expert based on the RFC.

## VI. CONCLUSION

For the reasons stated herein, it is recommended that the Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (docket no. 17); **AFFIRM** the Commissioner's final decision; and **DISMISS** Plaintiff's complaint.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure. Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 15, 2018         **s/ Mona K. Majzoub**
                                 MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION